# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

THRIVING CHILDREN ADVOCATES, LLC, et al.,

        Plaintiffs,

    v.

WATERLAND PRIVATE EQUITY INVESTMENTS, B.V., et al.,

        Defendants.

Case No. 3:26-cv-00484

District Judge Richardson

Magistrate Judge Frensley

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WORLD VISION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiffs' Response to World Vision's Motion to Dismiss ("Response")[1] attempts to walk back the allegations in the Complaint and bring new theories based on allegations never before asserted. At its core, the Response asserts arguments that are (1) directly contradicted by Plaintiffs' well-pleaded allegations, or (2) implausible on their face. Not only do these explanations improperly attempt to rewrite the Complaint and fail under the governing plausibility standard, but they also reinforce Plaintiffs' lack of standing.

## I. Plaintiffs' revised theory of competitive harm fails to state a claim.

Plaintiffs' Response largely focuses on a single argument not addressed in World Vision's Motion to Dismiss ("MTD"): that World Vision conspired with the LiveCo Defendants[2] for the charity to leave the market[3] for purchasing CCM Touring artists' concert solicitation platforms ("Platforms"), instead buying them solely from LiveCo. This theory fails to state an antitrust claim against World Vision as a matter of law.

To survive a motion to dismiss, the Complaint must plausibly support the argument that World Vision intended to enter into an unlawful conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The "inferences of conspiracy [must be] plausible as a matter of economic theory," with "[m]ore evidence . . . required the less plausible the charge of collusive conduct." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784

---

[1] Plaintiffs' Response was not filed within 14 days of the filing and service of World Vision's Motion to Dismiss. *See* LR 12.01(c)(2). World Vision does not oppose the Response on this basis because World Vision stipulated to allowing Plaintiffs additional time, which stipulation Plaintiffs did not file.

[2] The "LiveCo Defendants" retain the same definition as in the MTD. *See* MTD at 2 n.2.

[3] Plaintiffs cite cases finding a question of fact existed with respect to market definition, arguing market definition is inherently a question of fact. This misstates the law, which authorizes dismissal where the relevant market's definition is implausible. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Found. for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001).

1

F.3d 311, 319–20 (6th Cir. 2015). In this case, Plaintiffs' new assertion that World Vision agreed to stop directly purchasing Platforms and purchase them only from LiveCo is economically implausible on both the "buy" and "sell" sides.

The antitrust harm caused by monopolistic buyers—monopsonists—is that sellers are forced to accept lower prices than in a competitive market. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1232 (10th Cir. 2007) ("According to economists, without competition from other buyers, a monopsonist will lower prices paid to sellers."). Here, Plaintiffs' conspiracy imagines that World Vision deliberately locked itself into paying above-market prices (Compl. ¶¶ 8, 15, 170) for Platforms, agreeing to forgo direct purchases whose prices would plummet due to the purported monopsony.

Moreover, Plaintiffs assert, World Vision agreed not only to stop directly buying Platforms, but also to purchase such Platforms from only LiveCo—the entity which Plaintiffs claim has a monopoly. That also makes Plaintiffs' assertions economically implausible. Monopolistic sellers charge supracompetitive prices (i.e,, monopoly rents). Beyond making no economic sense for World Vision to agree to pay such prices, the theory would make World Vision the alleged conspiracy's victim. *See* MTD at 13.

In sum, it is economically implausible that World Vision would agree to stop directly purchasing Platforms—where, with a new monopsonistic buyer, it could enjoy lower costs—and agree to purchase such Platforms only from a monopolistic seller—at much higher costs. The much more plausible explanation is that TCA is simply unhappy that a new entrant entered the market TCA claims to have invented and occupied alone. Compl. ¶¶ 238, 119. That, however, is competition—not an antitrust violation. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

2

Regardless, Plaintiffs' monopsony theory does not fix their standing problem. An alleged monopsonist would have benefitted TCA by suppressing the prices CCM Touring artists could charge TCA for their Platforms, allowing TCA to increase its margins. LiveCo monopolizing the sale side—as Plaintiffs allege—would increase TCA's margins even more. The only Plaintiff who could conceivably suffer harm due to a conspiracy to monopolize the purchase of Platforms is the Newsboys, who could no longer sell their Platform directly to World Vision. But the Complaint forecloses the Newsboys' standing, failing to allege they ever sold, sought to sell, or even would sell their Platform to World Vision, with their sister company (TCA) and shared owner (Wesley Campbell) having boycotted World Vision. *See* MTD at 9; Compl. ¶¶ 121–22 (alleging that TCA "acrimoniously" ended relations with the charity on terms that were "not friendly").

Setting aside that their claim is legally insufficient, it is also factually insufficient. On a motion to dismiss, a court must accept as true only well-pleaded factual allegations, disregarding legal conclusions. *Twombly*, 550 U.S. at 545. Crucially, nothing in the Complaint alleges (1) World Vision and LiveCo were ever competitors or (2) that they jointly decided the charity would stop directly purchasing Platforms.

Instead, the Complaint confirms World Vision and LiveCo were not competitors. Plaintiffs allege LiveCo never bought Platforms until entering an alleged deal in which it would purchase and resell such Platforms to World Vision. *See* Compl. ¶¶ 10–11 ("Concert promoters did *not* participate in those nonprofit payments. . . . After the [LiveCo Defend-ants' proposed acquisition of TCA], with TCA operating as a part of LiveCo, the promoters would *finally* be able to participate *to some degree* in sponsorship payments." (emphases added)); *id.* ¶ 140; *id.* ¶¶ 14, 18 (alleging that LiveCo broke off the TCA acquisition

3

because of alleged deal with World Vision). Also, Plaintiffs never allege World Vision stopped purchasing Platforms directly from artists, nor the required elements that (1) World Vision did so with the intent to create a monopoly, and (2) made this decision together with LiveCo. *Re/Max Int'l v. Realty One, Inc.*, 900 F. Supp. 132, 152 (N.D. Ohio 1995), *aff'd*, 173 F.3d 995 (6th Cir. 1999) ("[C]onspiracy to monopolize requires proof of . . . both an existence of conspiracy and specific intent to monopolize." (citing *Richter Concrete v. Hilltop Concrete*, 691 F.2d 818, 823 (6th Cir. 1982))).

"If a complaint fails to state a claim . . . , the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020). Plaintiffs' argument—citing no authority—that its allegations not be read in isolation cannot compel the Court to read new, contradictory allegations into the Complaint.[4] For the convenience of the Court, World Vision attaches as **Exhibit 1** an inexhaustive list of these improper attempts to rewrite the Complaint.

## II. The Response fails to address the MTD's arguments regarding the non-antitrust claims.

Regarding the state antitrust claims, the Response fails to address the MTD's observation that the statute is limited to tangible goods. The Response's section on the Tennessee Charitable Solicitation Act ignores that Plaintiffs lack standing because they have

---

[4] Plaintiffs ask the Court to read World Vision's presence into allegations that expressly exclude the charity, in violation of precedent. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012); *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006), *aff'd*, 524 F.3d 726 (6th Cir. 2008). The Response's related argument that "[o]nce a conspiracy is shown, evidence connecting a particular defendant to the conspiracy need only be slight" (*United States v. Gibbs*, 1999 U.S. App. LEXIS 36343, *13 (6th Cir. 1999)), ignores the requirement that a conspiracy first be "shown." *See id.* at *13 ("A buyer/seller relationship alone is not enough to establish participation in the conspiracy."); *see also* MTD at 14.

4

not alleged that any Defendants engaged in unlicensed solicitations *in Tennessee*. In addition to ignoring World Vision's argument that no facts support its involvement in a Lanham Act violation and the fatal causation defects, the Response claims World Vision can be held vicariously liable under the Lanham Act based on a non-precedential decision that does not appear to even recognize such liability. In *Ketonatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, — F.4th —, 2026 U.S. App. LEXIS 20566 (10th Cir. 2026), the plaintiff *alleged* vicarious liability under the Lanham Act, but the court did not analyze whether any such liability existed and affirmed the lower court's finding that none of the Defendants were vicariously liable. *Id.* at *7, 24–25, 32. Finally, the Response's argument regarding tortious interference attempts to now ascribe a motive to World Vision—eliminating TCA as a "competitive obstacle to WV's and LiveCo's plans for the NPS Market"—that was never alleged.[5]

## III.    Conclusion

Plaintiffs' Response confirms what the Complaint had already revealed: no well-pleaded facts show World Vision either (1) entered any anticompetitive agreement or (2) joined any conspiracy to monopolize the only market in which it participated. Stripped of the legal conclusions, the Complaint alleges only that World Vision purchased an artist's Platform from LiveCo at a premium price. World Vision respectfully requests that the Court dismiss all claims against the charity with prejudice.

---

[5] No factual allegations indicate TCA was ever an obstacle to World Vision—or that World Vision ever had "plans" for the NPS market.

5

Date: August 5, 2026

Respectfully submitted,

*/s/ Benjamin S. Morrell*

Benjamin S. Morrell (TBPR No. 035480)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Tel.: (312) 527-4000
Fax: (312) 527-4011
bmorrell@taftlaw.com

Daniel R. Warncke (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
301 E. Fourth Street, Suite 2800
Cincinnati, OH 45202
Tel.: (513) 381-2838
Fax: (513) 381-0205
warncke@taftlaw.com

David E. Lamb (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel.: (612) 977-8400
Fax: (612) 977-8650
dlamb@taftlaw.com

*Counsel for Defendant World Vision, Inc.*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below, I filed the foregoing document using

the Court's CM/ECF system, which will send electronic notice to all counsel of record.

Dated: August 5, 2026

*/s/ Benjamin S. Morrell*

7